420 So.2d 1008 (1982)
Gustave H. RENZ
v.
OCHSNER FOUNDATION HOSPITAL/CLINIC.
No. 5-131.
Court of Appeal of Louisiana, Fifth Circuit.
October 12, 1982.
Kierr, Gainsburgh, Benjamin, Fallon & Lewis, Gerald E. Meunier, New Orleans, for plaintiff-appellant.
Adams & Reese, Henry B. Alsobrook, Jr. and Oscar L. Shoenfelt, III, New Orleans, for defendants-appellees.
Before SAMUEL, CURRAULT and DUFRESNE, JJ.
SAMUEL, Judge.
Plaintiff appeals from a judgment maintaining an exception of prematurity and dismissing his suit without prejudice.
The matter arises from personal injuries allegedly sustained by plaintiff as a result of the malfunction of a medical life support system following coronary by-pass surgery. Defendants, Ochsner Foundation Hospital/Clinic, filed the declinatory exception of prematurity based upon the fact that plaintiff's claim had not been presented to a medical review panel, a presentation, defendants assert, required under the Louisiana Medical Malpractice Act, LSA-R.S. 40:1299.41, et seq. It is conceded that both defendants qualify as health care providers within the contemplation of the act.
*1009 The sole issue for our determination is whether the trial court erred in finding plaintiff's claim falls within the purview of the act, thus making the suit in the district court premature.
Plaintiff contends: (1) His claim in this suit is independent of his claim under the malpractice act,[1] inasmuch as this suit is brought under C.C. Art. 2317,[2] which covers liability without fault; and (2) the mechanical device in suit is not one specifically enumerated in the malpractice act, and thus is not subject to it. We disagree with both contentions.
The medical malpractice act requires that all malpractice claims against health care providers covered under the act must be submitted to a medical review panel prior to filing of suit. LSA-R.S. 40:1299.47 A and B.
Under the act, a "health care provider" is defined broadly to include a hospital and its employees acting in the course and scope of their employment. R.S. 40:1299.41A(1). Clearly, the unknown and unnamed employee who connected the life support system to plaintiff is an employee of the hospital and no allegation has been made that the employee was acting other than in the course and scope of his employment when the accident occurred, or that the alleged tort was intentional.
As used in the act, malpractice includes any unintentional tort based on health care rendered by the health care provider to the patient. R.S. 40:1299.41A(8). It further includes any act or treatment performed or furnished by a health provider for, to, or on behalf of a patient during the patient's medical care, treatment or confinement. R.S. 40:1299.41A(9). The alleged tort suffered by plaintiff was one arising out of treatment rendered during his stay in the hospital.
In Cashio v. Baton Rouge General Hospital, 378 So.2d 182, the plaintiff presented a similar argument, i.e., that the malpractice act did not apply because the defendant hospital could be found liable under the strict liability articles of the Civil Code.
Our brothers of the First Circuit rejected the argument stating:
".... We do not have to conclude in this case whether hospitals can be held liable without fault under those articles. Instead we hold, based upon our understanding of the legislative intent, that any conduct complained of should be handled under the procedure of the Act if it can be reasonably said that it comes within the definitions of the Act even though there may be alternative theories for liability." 378 So.2d 185.
The same contention also was considered and rejected by the Third Circuit in Wyble v. St. Luke General Hospital, 415 So.2d 622, handed down May 26, 1982. We find the holdings in Cashio and Wyble applicable here.
Relative to appellant's second contention, plaintiff claims the device[3] which caused his injuries is not one of those included in R.S. 40:1299.41A(8), and it is therefore excluded under the malpractice act.
Revised Statute 40:1299.41A(8) defines malpractice as follows:
"(8) `Malpractice' means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicines, or from defects in *1010 or failures of prosthetic devices, implanted in or used on or in the person of a patient." LSA-R.S. 40:1299.41A(8).
In our view, use of a life support system is a part of "professional services rendered" and thus falls within the above definition. This, of course, is in addition to, and conforms with, the definition of "health care provider" contained in LSA-R.S. 40:1299.41A(1), which includes employees of the hospital and clinic in this case.
For the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.
NOTES
[1] He has filed separate proceedings with the medical review panel against the hospital/clinic and three doctors connected therewith in accordance with R.S. 40:1299.47.
[2] "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications." LSA-C.C. Art. 2317.
[3] A Sorenson Intra Flow device which monitors pressure in the heart chamber or ventricle, post operatively.