WALTER J. ROTHSCHILD, Judge.
| gPlaintiffs, W.P. and E.P., individually and on behalf of their minor child, H.P., filed the instant petition for damages against River Oaks Child and Adolescent Hospital alleging that River Oaks was negligent in failing to prevent a sexual assault to H.P. which occurred while H.P. was a patient at the hospital. River Oaks responded with a dilatory exception of prematurity on the basis that the claims were governed by the Louisiana Medical Malpractice Act and must be reviewed by a medical review panel prior to commencement of litigation. Plaintiffs opposed this exception, and the matter was heard by the trial court oh March 31, 2011. On April 11, 2011, the trial court rendered judgment granting defendant’s exception and dismissing plaintiffs’ petition without prejudice. The trial court orally assigned the following reasons for judgment:
River Oaks is a mental facility that takes care of adolescents. In the allegations of the petition it is quite clear to this Court that the assessment of patients, the room assignment, particularly in this regard, the handling of any complaints, all of that falls clearly, in this Court’s mind, under the Medical Malpractice Act.
| sPlaintiffs now appeal from this ruling on the basis of several assignments of error. Plaintiffs contend on appeal that the trial court erred in finding this case is governed by the provisions of the Louisiana Medical Malpractice Act. Plaintiffs allege that the allegations in the petition sound in general negligence law rather than in medical malpractice, as the claims asserted are not related to the provision of medical care.
Defendant contend that the claims fall within the purview of the LMMA because they implicate professional medical decision-making by the hospital and its staff regarding the admission, monitoring and supervision of psychiatric patients.

The Louisiana Medical Malpractice Act (LMMA)

La. R.S. 40:1299.41, et seq., sets forth the limitations of liability for “qualified health care providers” and provides a *1099 procedural framework for the litigation of medical malpractice claims. See generally, Delcambre v. Blood Systems, Inc., 04-561, p. 5 (La.1/19/05), 893 So.2d 23, 27. The LMMA’s procedural requirements and limitations of liability apply only to medical malpractice claims. Delcambre, supra, citing Coleman v. Deno, 01-1517, pp. 15-16 (La.1/25/02), 813 So.2d 303, 315. All other tort liability by a qualified health care provider is subject to the general law of torts. Id. We note that, because the provisions of the LMMA are in derogation of the rights of tort victims, the act is strictly construed. Blevins v. Hamilton Med. Ctr., Inc., 07-127, p. 5 (La.6/29/07), 959 So.2d 440, 444; see also, LaCoste v. Pendleton Methodist Hosp., L.L.C., 07-0008, p. 6 (La.9/5/07), 966 So.2d 519, 523.
One of the primary features of the LMMA is that, when a plaintiff asserts a claim meeting the statutory requirements, unless the parties agree to waive the requirement, the plaintiff must submit his complaint to a medical review panel and |4may not file suit in any court until the medical review panel has rendered its expert opinion on the merits of the complaint. La. R.S. 40:1299.47; Delcambre, supra, 893 So.2d at 27. Thus, if the plaintiff fails to submit the claim to a medical review panel before the institution of suit, the appropriate procedural remedy is a timely filed exception of prematurity. Blevins, supra, 959 So.2d at 444.
At the hearing on an exception of prematurity, “evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition.” La.C.C.P. art. 930. “The burden of proving prematurity is on the exceptor ... who must show that it is entitled to a medical review panel because the allegations fall within the [LMMA].” Blevins, 959 So.2d at 444.
“Malpractice,” as defined by the LMMA at the time this cause of action arose, is:
any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.
La.R.S. 40:1299.41(A)(13) (emphasis added).
The LMMA defines a “patient” as “a natural person, including a donor of human blood or blood components and a nursing home resident who receives or should have received health care from a licensed health care provider, under contract, expressed or implied.” La.R.S. 40:1299.41(A)(15). Further, “health care” is defined as “any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a [ ¡¡patient during the patient’s medical care, treatment, or confinement, ...” La.R.S. 40:1299.41(A)(9). See, Atkinson v. Lammico Ins. Co., 11-13, p. 4 (La.App. 3 Cir. 5/4/11), 63 So.3d 1176, 1179-80; writ denied, 11-1156 (La.9/16/11), 69 So.3d 1151.
In determining whether certain conduct by a qualified health care provider constitutes “malpractice” as defined under the LMMA the Louisiana Supreme Court has utilized the following factors:
*1100 [1] whether the particular wrong is ‘treatment related’ or caused by a dereliction of professional skill,
[2] whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached, and
[3] whether the pertinent act or omission involved assessment of the patient’s condition.
[4] whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,
[5] whether the injury would have occurred if the patient had not sought treatment, and
[6] whether the tort alleged was intentional.
Coleman v. Deno, supra, 813 So.2d at 315-316.
The issue of whether a claim sounds in medical malpractice involves a question of law, so we conduct a de novo review. Hernandez v. Diversified Healthcare-Abbeville, LLC, 09-546, pp. 1-2 (La. App. 3 Cir. 11/4/09), 24 So.3d 284, 285, writ denied, 09-2629 (La.2/12/10), 27 So.3d 849.

The allegations of plaintiffs’ petition

In their petition, plaintiffs allege that H.P. was admitted to the psychiatric unit of River Oaks Hospital on July 18, 2009 and remained there until July 31, 2009. Plaintiffs allege that H.P. was sexually assaulted by another patient on two occasions while in the hospital, and that H.P. reported the assault to a nurse who stated she did not believe him. Plaintiffs further allege:
IfiAt the time of the sexual assault upon H.P., he was a patient in the custody and charge of River Oaks Child and Adolescent Hospital. As such, the defendant had a duty to protect him as a patient within their care and custody, from other patients. Defendant is further guilty of negligently training and supervising its staff and employees at River Oaks Child and Adolescent Hospital, and failure to follow hospital policies with regard to supervision of minors and/or psychiatric patients.
The specific acts of negligence set forth in the petition are as follows:
a) Failing to maintain proper security;
b) Failure to keep a constant watch on minor patients unable to care for themselves;
c) Placing H.P. in a room with another psychiatric patient, “Charles,” thereby allowing the sexual assault/sodomy to occur;
d) Failing to take measures to insure H.P.’s safe care while in the custody and control of the Defendant, River Oaks Child and Adolescent Hospital;
e) Failing to assist H.P. after it was known that he had been sexually assaulted;
f) Failing to provide protection from a second sexual assault by “Charles”;
g) Failing to provide adequate monitoring and other devices necessary to insure the safety of minor patients;
h) All other acts of negligence, the specific nature of which are unknown to plaintiffs but which are particularly within the knowledge of the defendant, its agents and employees.

Legal Arguments and Analysis

By this appeal, plaintiffs argue that the negligent conduct referred to in the petition was not committed within the context of the administration of medical services and was not treatment related in any way. In support of this argument, plaintiffs contend that the trial court erred in its application of the Coleman factors to *1101 the facts of the present case. Plaintiffs rely heavily on two Louisiana cases which apply the Coleman factors and conclude that similar injuries inflicted in a medical facility fall outside the scope of the LMMA.
|7In Riley v. Maison Orleans II, Inc., 01-498 (La.App. 4 Cir. 9/25/02), 829 So.2d 479, 496, writs denied, 02-2653 (La.12/19/02), 833 So.2d 348 and 02-2646 (La.12/19/02), 833 So.2d 345, a nursing home was held liable based on negligent supervision of staff for an attack by one resident on another under general tort principles. However, there was no discussion in that decision of medical malpractice principles, nor is there any indication that defendants asserted applicability of the LMMA. Rather, the incident pre-dated the 2001 amendment to the LMMA which added the phrase “in the training or supervision of health care providers” to the definition of malpractice. This case is therefore not relevant to the issues raised by this appeal.
Plaintiffs also rely on Leonard v. State, Dept. of Health & Hospitals-Ruston Developmental Ctr., 42,893 (La.App. 2 Cir. 1/30/08), 975 So.2d 662, 665, writ denied, 08-805 (La.6/6/08), 983 So.2d 920, wherein a young man died after gaining unauthorized access to the facility’s medicine cabinet. However, we find this case to be distinguishable from the instant situation: the defendant was in a group home rather than a psychiatric medical facility such as River Oaks and, unlike the present case, the young man in Leonard was not seeking medical treatment at the time of the incident. We therefore fail to find this case controlling in the instant case.
After review of the allegations of plaintiffs’ petition in the present case, as well as applicable statutory authority and all pertinent jurisprudence, we find that the record supports River Oaks’ contention that plaintiffs’ claims fall within the scope of the LMMA. We distinguish the jurisprudence cited by plaintiffs from the facts of the present case, and we reach the conclusion that the allegations as set 18forth by plaintiffs must be presented to a medical review panel prior to instituting the present litigation.
In the present case, plaintiffs have alleged that the hospital was negligent in placing H.P. in a room with another psychiatric patient. These allegations of the petition raise the unique situation of placing a minor patient in a room with another patient with special medical needs. As such, the allegations relate to the particular medical assessment and condition of each of the patients, and are therefore related to the treatment of the patients within the meaning of the medical malpractice act. Further, the assessment of patients as the basis for making room assignments will certainly require expert evidence bearing on the nature of the patients’ diagnoses and will require an examination of the hospital staffs exercise of professional judgment in making these assignments. Whether the hospital exercised appropriate care in assigning the minor H.P. to a room with another patient being treated in the psychiatric hospital is beyond the common experience of a layman. We find that a determination of a breach of the appropriate standard of care for assessment of psychiatric patients and making room assignments based on this assessment falls within the scope of the malpractice act.
The allegations of the petition also raise the issue of alleged misconduct by the hospital staff in failing to provide appropriate supervision and monitoring of the minor child, H.P., while he was an in-patient at the psychiatric medical facility. The level of observation of a minor psychiatric patient required by a hospital staff is nec *1102 essarily treatment-related and will require expert testimony regarding the exercise of professional judgment in this regard. The ordinary layman does not know the type of monitoring required in an adolescent psychiatric hospital, and expert testimony will likely be required.
| (¡Plaintiffs also contend that the hospital staff was negligent in failing to assist H.P. after learning he had been assaulted. This allegation raises questions regarding the exercise of medical judgment by the hospital staff and whether the staff properly evaluated H.P.’s complaints of abuse and took necessary steps to prevent a second incident. Expert testimony will likely be required for the fact-finder to determine whether the staffs actions were adequate in light of the physical and mental characteristics of the two patients who were confined in a psychiatric hospital at the time of the occurrences.
Both the clear provisions of the LMMA as well as an application of the factors set forth by the Supreme Court in Coleman lead us to a determination that the cause of action asserted in the present case is one sounding in medical malpractice rather than in general tort law. The allegations within the plaintiffs’ petition involve issues of medical judgment which are treatment related and are not within the common knowledge and experience of laymen. Accordingly, the trial court correctly determined that plaintiffs are required to present the matter to a medical review panel prior to filing this suit in the district court.
Plaintiffs also contend by this appeal that the trial court erred in failing to address the argument that defendant’s actions should be considered negligence per se pursuant to the provisions of La. Children’s Code article 1409(T), which provides that an institution which confines a minor child “shall prohibit the mistreatment, neglect, or abuse of any minor child in any way.” Plaintiffs contend that although this statute does not create an independent cause of action against the hospital, it should be considered as a method of establishing general negligence theories of duty and breach of duty which arises outside of the scope of medical malpractice.
| mHowever, the applicability of the provisions of the Children’s Code is limited to juvenile court proceedings. La. Ch.C. art. 103. Accordingly, such provisions are inapplicable in the present case. Rather, plaintiffs must pursue these claims of general negligence within the framework of statutory authority for litigation of claims against qualified health care providers, i.e., within the scope of the medical malpractice act.
In their final argument on appeal, plaintiffs argue that the trial court failed to address the extensive Louisiana jurisprudence which holds that sexual abuse committed in health care facilities falls outside the scope of the LMMA for such acts do not occur through the provision of medical care. We have examined each of the cases cited by plaintiffs and fail to find this line of cases applicable to the facts of the present case.
In Jure v. Raviolla, 612 So.2d 225, 228 (La.App. 4th Cir.1992), writ denied, 614 So.2d 1257 (La.1993), the Court found that plaintiffs claims fell outside the definition of malpractice as the sexual contact alleged by the plaintiff was a result of an intentional act by a health care professional. There are no allegations of an intentional act in the present case. In Reaux v. Our Lady of Lourdes Hospital, 492 So.2d 233 (La.App. 3 Cir.1986), writ denied, 496 So.2d 333 (La.1986), the Court held that a claim against a hospital following a patient’s rape by an outside intruder fell outside the scope of the malpractice act. In that case, the plaintiffs alleged that the *1103 rape was a result of a lack of monitoring and security in the hospital, and there were no allegations which could be found to be treatment related.
Unlike the claim asserted in Reaux, the plaintiffs in the present case have claimed that the patient was a minor who was an in-patient in a psychiatric Inhospital, and that the hospital staff failed to properly assess and monitor the situation to prevent the incident in this case. The allegations of the petition assert facts which relate to the medical treatment of the patient, and a determination of whether a duty was breached by defendant will require expert testimony due to the nature of this particular case involving a minor patient in a psychiatric hospital. We find that the current state of the malpractice statute requires such a claim to be brought before a medical review panel, and we find the cases cited by plaintiffs to be inapposite.[1]
Further, in a recent decision from this Court, we affirmed a lower court ruling granting River Oaks’ exception of prematurity. Buford v. Williams, et al., 11-568 (La.App. 5 Cir. 2/14/12), 88 So.3d 540. In that case, plaintiff alleged that while a patient at River Oaks Hospital, she was raped by an employee of the hospital. This Court held that plaintiffs claims of the hospital staffs negligent supervision of the employee and negligence both in failing to keep plaintiff safe and in making plaintiffs room assignment are within the definition of malpractice. We find this decision to be persuasive in our resolution of the present case.
Although plaintiffs contend that the trial court’s ruling conflicts with prior jurisprudence regarding cases involving sexual abuse, we fail to find legal support for such an argument. Rather, we find that the trial court correctly determined that the claims as asserted in plaintiffs’ petition are governed by the Louisiana Medical 112Malpractice Act. We conclude therefore that the trial court correctly granted defendant’s exception of prematurity, and the trial court’s judgment is hereby affirmed.

AFFIRMED

. Plaintiffs also cite to Alphonso v. Charity Hosp. of Louisiana at New Orleans, 413 So.2d 982 (La.App. 4 Cir. 1982) writ denied, 415 So.2d 952 (La. 1982), a case involving the amount of damages awarded to a patient raped while in Charity Hospital. However, there is no discussion in that case of applicability of the malpractice statute, and we fail to find the case to be helpful in our present analysis.